**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HORIZON STEVEDORING, INC.,**<br>      **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **ROYAL WHITE CEMENT, INC.,**<br>      **Defendant/Third Party Plaintiff,** | **NO.  22-711** |
| **v.** | |
| **JOHN BROWN,**<br>      **Third Party Defendant.** | |

<u>**MEMORANDUM**</u>

**HODGE, J.**                                                    **October 28, 2024**

     Horizon Stevedoring, Inc. ("Horizon") and Royal White Cement, Inc. ("RWC") executed a term sheet for the proposed sale of one hundred percent of Horizon's outstanding capital stock to RWC and the assignment to RWC of Horizon's parent company's lease of Pier 82 from the Port of Philadelphia ("PhilaPort"). After the transaction failed to close, Horizon sued RWC for breach of contract and sought a declaratory judgment that Horizon was entitled to retain RWC's $300,000 deposit. In response, RWC filed counterclaims against Horizon for breach of contract and unjust enrichment, and against Horizon and its Vice President John Brown for fraudulent and negligent misrepresentation and conversion. In November 2022, the Honorable Judge Schiller dismissed RWC's counterclaim for conversion with prejudice, and granted Horizon's Motion for Judgment on the Pleadings as to RWC's counterclaims for fraudulent misrepresentation, granting RWC leave to refile. The parties have now filed cross-motions for partial summary judgment only as to their respective breach of contract claims. They have not asked the Court to rule on Horizon's declaratory judgment claim, RWC's counterclaim for unjust enrichment, or RWC's counterclaims

1

for fraudulent or negligent misrepresentation. For the reasons that follow, both parties' motions for summary judgment on the breach of contract claims are denied.

## I.   **BACKGROUND**[1]

Plaintiff/Counterclaim Defendant Horizon Stevedoring, Inc. and its owner John Brown, operate a business out of Pier 82 at the Port of Philadelphia, unloading and storing products that arrive by sea from Scandinavia. (Horizon Statement of Material Facts, ECF No. 30-1 ¶ 1). Defendant/Counterclaim Plaintiff Royal White Cement is in the business of selling white cement. (RWC's Statement of Material Facts, ECF No. 31 ¶ 1).

In the summer of 2021, RWC began importing product via cargo ships to PhilaPort to offload and transfer its product. (ECF No. 31 ¶ 7). In order to reduce costs, RWC began to look into leasing a pier from PhilaPort and was soon informed that Horizon was attempting to sell its interest in PhilaPort Pier 82. (*Id.* ¶¶ 8-9). On or around August 20, 2021, RWC owner Marcel Fadi and RWC Philadelphia Operations Manager Bill Goglas met with John Brown and Hubert Manns, Horizon's Controller, and toured Pier 82. (*Id.* ¶¶ 9-10). RWC then told Brown and Horizon that it was interested in assuming Horizon's Pier 82 lease, conditional on PhilaPort's approving RWC's use of the pier. (*Id.* ¶ 11).

### i.   **The Term Sheet**

On September 13, 2021, RWC and Horizon executed a term sheet summarizing the terms and conditions of the proposed transaction. (ECF No. 31 ¶ 12). The Term Sheet's first page established that the document "is for discussion purposes only and, except for the provisions captioned 'Deposit,' 'Confidentiality,' 'Expenses,' and 'Governing Law' is not binding upon any party." (ECF No. 29-3 at 2). It also stated that the parties to the Term Sheet "are not obligated to

---

[1]   The Court adopts the pagination supplied by the CM/ECF docketing system.

consummate a transaction unless and until definitive deal documents have been mutually agreed to and executed by the parties hereto." (*Id.*).

The Term Sheet's first provision, captioned "Transaction," memorialized the expectation that RWC or an affiliate would purchase all of Horizon's outstanding capital stock and, "[c]ontemporaneously with the sale," Penn Warehousing & Distribution ("PWD") [Horizon's parent company] would assign RWC "all of its right, title, and interest in" Pier 82's lease. (ECF No. 29-3 at 2). In a subsequent provision also captioned "Transaction," RWC and Horizon agreed to "work in good faith to structure a mutually acceptable transaction . . . in the most tax efficient manner for both parties." (*Id.*)

The "Purchase Price" stated that the price for both Horizon's outstanding capital stock and the lease assignment for Pier 82 would be $3,000,000 "in cash, payable at the Closing of the Transaction." (*Id.*). In the provision captioned "Closing," Horizon and RWC agreed the transaction would close "no later than 60 days after PhilaPort approves the assignment of the lease" or after "[PhilaPort's] entry into a new lease for Pier 82" with RWC. (*Id.*)

Most importantly for the cross-motions for partial summary judgment at issue, the "Deposit" provision provided that RWC would pay Horizon a $300,000 deposit contemporaneously with its execution of the Term Sheet. (*Id.* at 3). The Deposit was to be returned to RWC without interest in the event that: (1) Horizon or PWD breached its obligation to close the Transaction under a later-executed Purchase Agreement and related Agreements (collectively, the "Definitive Agreements"), or (2) PhilaPort did not approve the assignment of the Lease or enter into a new lease for Pier 82 with RWC. (*Id.*) The Term Sheet further provided that Horizon would retain the Deposit if the transaction failed to close "for any other reason." (*Id.*).

Under the "Due Diligence" provision, RWC had fifteen days from the date of execution of the Term Sheet "to contact the Port to begin negotiations of the assumption and/or assignment of the subject leasehold held for Pier 82" and was obligated to "proceed with said negotiations in good faith." (*Id.*). Horizon was required to supply RWC "with a full list" of its assets and liabilities, and RWC had forty-five days after receiving the due diligence information "to pursue its understanding" of those assets and liabilities "while pursuing the assignment and/or assumption of the Pier 82 lease." (*Id.*).

Representatives for both companies signed the Term Sheet, and RWC contemporaneously wired Horizon the $300,000 deposit. (ECF No. 31 ¶¶ 17-18).

### ii.    The Amended Term Sheet

On October 27, 2021, the parties executed an Amended Term Sheet, which gave RWC "until January 7, 2022 to complete its Due Diligence . . . while pursuing the assignment and/or assumption of the Pier 82 lease." (ECF No. 29-5 at 2) The Amendment still required RWC to "negotiate in good faith with PhilaPort for the assumption and/or assignment of the subject leasehold held for Pier 82." (*Id.*)  Horizon was to "cooperate fully with RWC as to the financial information and other information requested during the period of Due Diligence." (*Id.*).

### iii.    Due Diligence Efforts and Communications with PhilaPort

Horizon and RWC exchanged due diligence information and drafts of Definitive Agreements between September 2021 and January 2022. (ECF No. 30-1 ¶ 13). Both parties maintain that they engaged in good faith efforts at this time, including by attempting to secure PhilaPort's approval of the lease assignment to RWC. (*See* ECF No. 29-2 at 5; ECF No. 30-1 ¶ 14).

On November 29, 2021, RWC sent Horizon its list of due diligence questions. (ECF No. 30-1 ¶ 15). In mid-December 2021, Horizon's counsel informed RWC that, "it appears that PhilaPort will only get involved in this transaction after we have negotiated the terms of an assignment of the lease and ask for its approval." (*Id.* ¶ 18). Horizon then provided responses to RWC's diligence requests on or around December 24, 2021. (*Id.* ¶¶ 15-16, 19). RWC maintains that Horizon's due diligence responses were incomplete. (ECF No. 31 ¶ 28).

Between the end of December 2021 and early January 2022, RWC's counsel repeatedly informed Horizon's counsel that RWC was still unsuccessful in its efforts to meet with PhilaPort. (ECF No. 31 ¶ 29; ECF No. 30-1 ¶ 24). On January 5, Horizon's attorney suggested that the appropriate "next steps," even if "somewhat inefficient," would be "to finalize the transaction documentation and add a closing condition that [RWC] is satisfied with its due diligence." (ECF No. 30 ¶¶ 26-27). RWC's counsel responded, "[a]greed, when you don't have any options your [choices] are clear." (*Id.* ¶ 28). On January 7, Horizon's counsel forwarded RWC's counsel a revised non-binding draft Stock Purchase Agreement ("SPA"), which included a condition requiring RWC's satisfaction with the due diligence information it received in order for the transaction to close. (*Id.* ¶¶ 29-30).

### iv.   **The Transaction Fails to Close**

RWC did not execute or further negotiate the Stock Purchase Agreement. (ECF No 30-1 ¶ 32). RWC maintains that it did not move forward with the transaction because it did not receive adequate responses to its due diligence requests. (*Id.* ¶ 33). It also asserts that PhilaPort did not approve a lease assignment or "give[] any indication that it will in the future approve, or discuss such a Lease assignment." (ECF No. 31 ¶ 34).

Once the transaction failed to close, RWC's counsel sent Horizon's counsel a letter asking him to "accept this correspondence as formal termination of any agreement between the parties and request for the return of the Royal White Cement deposit of $300,000 . . . ." (ECF No. 29-9 at 2). Horizon did not return RWC's deposit, and subsequently brought this action against RWC.

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is genuine if the evidence presented is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (internal citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)). Therefore, if after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate. *Wisniewski v. JohnsManville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

These summary judgment rules do not apply any differently where there are cross-motions pending. *See Lawrence v. City of Phila.,* 527 F.3d 299, 310 (3d Cir. 2008). The Third Circuit has stated that "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* (quoting *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968)).

## III.    DISCUSSION

The language of the Term Sheet states, "In the event that Sellers or PWD breach their obligation to close the Transaction under the Definitive Agreements or PhilaPort (Port) does not approve the assignment of the lease or enter into a new lease for Pier 82 with the Purchaser, the Deposit will be returned to the Purchaser, without interest. If the transaction fails to close for any other reason, the Deposit shall be retained by the Company." (ECF No. 29-3 at 3). The Amended Term Sheet further requires that Horizon provide RWC with complete due diligence information, which RWC would evaluate in good faith while it continued its attempts to negotiate the lease assignment with PhilaPort. (ECF No. 29-5 at 2).

In Count I of its complaint, Horizon claims RWC has breached its obligations set forth in the Term Sheet by 1) failing to assess the due diligence information it was provided in good faith to structure a mutually acceptable transaction and raising disingenuous objections to Horizon's fulsome disclosures, and 2) refusing to execute or continue negotiating the Revised Stock Purchase Agreement, thus failing to negotiate in good faith with PhilaPort for the assignment of the Pier 82 lease. (ECF No. 1 ¶¶ 33-34). Horizon alleges damages including the loss of the purchase price, as well as Horizon's continued costs of maintaining the Pier 82 lease. (*Id.* ¶ 35).

In Count I of its Counterclaim, RWC alleges that Horizon breached its obligations under the Term Sheet by 1) failing to fully cooperate with RWC during the due diligence period ending on January 7, 2022, and 2) refusing to return RWC's $300,000 deposit after PhilaPort did not approve the lease assignment or enter into a new lease for Pier 82 with RWC. (ECF No. 22 ¶ 76).

The parties each move for summary judgment on their own breach of contract claim and on the opposing side's breach of contract claim.

### i.   RWC's Motion for Summary Judgment

RWC moves for summary judgment on RWC's counterclaim for breach of contract, Horizon's breach of contract claim, and asks the Court to enter judgment in favor of RWC in the amount of $300,000.[2]

In support of its breach of contract claim against Horizon, RWC argues that it performed its due diligence while continuing to pursue the lease assignment with PhilaPort. (ECF No. 29-2 at 13). RWC states that it therefore fulfilled its obligations under the Term Sheet and the Amended Term Sheet. (*Id.*). RWC asserts that despite it fulfilling those obligations, Horizon failed to return RWC's $300,000 deposit after PhilaPort failed to approve the lease assignment or enter into a new lease with RWC. (*Id.* at 13-14).

RWC argues that under the "plain and ordinary meaning" of the Deposit section of the Term Sheet, the undisputed fact that PhilaPort never agreed to the lease assignment means that RWC is entitled to the return of its deposit. (*Id.* at 14-15). However, Horizon argues that the dispute is not so simple. Horizon contends that "the Term Sheet and Amendment clearly establish Horizon's right to retain the Deposit if the Transaction failed to close 'for any other reason' besides

---

[2]     RWC failed to file its Statement of Fact alongside its Motion for Summary Judgment, as required by Judge Schiller's January 11, 2023 order (ECF No. 27), and this Court's Policies and Procedures. This would create an independent basis for denying RWC's motion. However, in the interest of providing the parties with as much information as possible, the Court will explain its alternative reason for denying RWC's motion.

Horizon's breach of its obligations or PhilaPort's refusal to approve the assignment, and that it was RWC's failure to "negotiate in good faith with PhilaPort," that caused the transaction to fail. (ECF No. 32 at 7).

In support of its argument that it was in fact RWC's failure to negotiate in good faith that caused the transaction to fail, Horizon points to the emails between the parties agreeing that a finalized deal with a closing condition would be the best option to get PhilaPort to agree to the lease assignment, despite that plan being "somewhat inefficient." (*Id.* at 8). However, when Horizon sent RWC the Revised SPA, RWC backed out of the deal. (*Id.*). According to Horizon, by refusing to execute or further negotiate the Revised SPA and thereby refusing to negotiate further with PhilaPort, RWC failed to satisfy its obligations of good faith set out in the Amended Term Sheet. (*Id.* at 11). Horizon maintains that it was only required to return the Deposit if RWC engaged in those good faith efforts and that RWC's failure to act in good faith led to the transaction not being consummated. (*Id.* at 6-7).

In support of its motion for summary judgment on Horizon's breach of contract claim against RWC, RWC argues that Horizon attempts to impose additional obligations on RWC, including the requirements that RWC assess the due diligence information in good faith, execute the Revised SPA, and negotiate with PhilaPort in good faith. (ECF No. 29-2 at 11). RWC also argues that Horizon has presented no evidence that RWC has violated its obligations under the Term Sheet. (*Id.* at 12). Additionally, RWC states that it attempted to negotiate with PhilaPort in good faith, but at no point was PhilaPort amenable to meeting with RWC. (*Id.*). Horizon responds that RWC's argument about additional requirements ignores the obligations placed upon RWC in the Amended Term Sheet. (ECF No. 32 at 6-7).

The Court finds that a dispute of fact exists as to the reason the transaction failed to close; RWC claims that it was due to PhilaPort's refusal to approve the lease assignment, while Horizon alleges that it was RWC's failure to act in good faith. There is also a genuine dispute of fact as to whether RWC met its obligation to engage in good faith efforts, including its decision not to execute the revised SPA, which was necessary to obtain PhilaPort's approval of the lease assignment. Both unresolved issues are questions of fact for a jury to determine. *See In re HomeBanc Mortg. Corp.*, 945 F.3d 801, 810 (3d Cir. 2019) ("As a general matter, this Court has long considered the determination of good faith to be an "ultimate fact.") (quoting *Hickey v. Ritz-Carlton Rest. & Hotel Co. of Atlantic City,* 96 F.2d 748, 750-51 (3d Cir. 1938). The Court finds that a reasonable jury could find for the non-moving party on both these issues. Thus, RWC's Motion for Partial Summary Judgment is denied.

### ii.    <u>Horizon's Motion for Summary Judgment</u>

Horizon moves for summary judgment on its breach of contract claim against RWC, alleging that RWC breached the Term Sheet by failing to engage in good faith due diligence. (ECF 30-2 at 5). Horizon also moves for partial summary judgment on RWC's breach of contract counterclaim. (*Id.*). Horizon's Motion for Partial Summary Judgment is essentially the inverse of RWC's Motion for Partial Summary Judgment, thus, much of the reasoning in the preceding section is adopted here.

Horizon argues that the Term Sheet is unambiguous in that Horizon may retain RWC's deposit if that transaction fails to close "for any other reason" besides Horizon's breach or PhilaPort's failure to approve the lease assignment. (ECF No. 30-2 at 8). Horizon claims that RWC's bad faith conduct in conducting its due diligence and negotiating with PhilaPort constitutes such "other reason," thus, Horizon should be able to retain the Deposit. (*Id.*). In support of its

argument that RWC negotiated in bad faith, Horizon points to interrogatories in which it asked RWC to explain why RWC did not execute the Revised SPA and alleges that RWC's response—that it did not receive full due diligence responses from Horizon—is an inadequate answer. (*Id.* at 11). Horizon states that "the record amply demonstrates RWC's lack of diligence and failure to cooperate in structuring a mutually acceptable transaction," (*Id.* at 12).

As in its own motion, RWC disputes Horizon's statement that the transaction failed to close for some "other reason." (ECF No. 35 at 7). RWC maintains that the transaction failed to close because PhilaPort did not approve the lease assignment, and points to deposition testimony from John Brown acknowledging that PhilaPort did not approve the lease assignment. (*Id.*). RWC further states that it did act in good faith in its due diligence review and its negotiations with PhilaPort. (*Id.* at 8).

There is no dispute that PhilaPort never approved the Pier 82 lease assignment. However, that fact does not establish conclusively that PhilaPort's refusal was or was not the reason the transaction failed close. While RWC makes that argument, Horizon argues that it was RWC's lack of good faith that caused the transaction not to close.

As the Court previously noted, the questions of whether there was some cause, other than PhilaPort's undisputed failure to approve the assignment, which resulted in the transaction not closing and the question of whether RWC engaged in good faith negotiations are both questions for a fact-finder. The Court finds that a genuine dispute of fact exists as to these questions, and again finds that a reasonable fact finder could find for the non-moving party with respect to these two factual issues. Therefore, Horizon's Motion for Partial Summary Judgment is denied.

**IV.     CONCLUSION**

For the reasons discussed above, the Court will deny both parties' Motions for Summary Judgment. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**